**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JESSICA NGUYEN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 20-cv-00718 (APM)** |
| ) | |
| **U.S. DEPARTMENT OF HOMELAND** ) | |
| **SECURITY et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs in this action are a mix of United States citizens, lawful permanent residents, and diversity visa lottery winners, who seek a temporary restraining order preventing Defendants from implementing and enforcing Presidential Proclamation 10014, Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak, 85 Fed. Reg. 23,441 (Apr. 22, 2020) ("Proclamation"). Because Plaintiffs have failed to establish Article III standing, the court denies Plaintiffs' motion.

### I.

### A.

On April 22, 2020, President Trump signed Presidential Proclamation 10014, which temporarily suspends the "entry into the United States" of certain classes of immigrants who did not already have a valid immigrant visa or travel document as of April 23, 2020, the effective date of the Proclamation. 85 Fed. Reg. at 23,442–43 §§ 1, 2(a), 5. The Secretaries of State and Homeland Security are tasked with implementing the Proclamation as it applies to visas and aliens, respectively. *Id.* at 23,443 § 3.

As relevant here, the Proclamation suspends entry of most immigrants with family-based and diversity visas, subject to certain exceptions not relevant for present purposes. *See generally id.* The family-based visa program allows United States citizens and permanent residents to "sponsor" non-citizen family members, or "beneficiaries," for immigrant visas. *See* 8 U.S.C. §§ 1151, 1153(a). A family member seeking to sponsor a beneficiary must file a petition with the United States Citizenship and Immigration Services ("USCIS"). *See* Pls.' Mot. for Temporary Restraining Order, ECF No. 6 [hereinafter Pls.' Mot.], at 4–5; *see also* AUSTIN T. FRAGOMEN, JR. ET AL., IMMIGRATION PROCEDURES HANDBOOK § 12:2 (Dec. 2019) [hereinafter HANDBOOK]. Once the petition is approved, the beneficiary must then apply for permanent resident status, either by seeking an "adjustment of status" with USCIS (if the beneficiary is located in the United States) or, as relevant here, by applying for an immigration visa at a State Department consulate (if she is located abroad). *See* Pls.' Mot. at 5; HANDBOOK § 12:1–2, 19:1–2, 20:1; *see also* 8 U.S.C. § 1201. With limited exceptions, all visa applicants "must attend a visa interview" as part of the application process. *See* HANDBOOK § 19:2; 8 U.S.C. § 1201; 22 C.F.R. § 42.62.

The diversity visa program, in turn, is an annual process by which individuals from countries with a proportionally small number of immigrants to the United States may apply for immigrant visas. 8 U.S.C. § 1153(c)(1). A diversity visa applicant "must first apply for and win the diversity visa 'lottery.'" *Almaqrami v. Pompeo*, 933 F.3d 774, 776 (D.C. Cir. 2019) (citing 8 U.S.C. § 1153(e); 22 C.F.R. § 42.33(b)–(c)). A lottery winner, or "selectee," must then apply for a "visa number"—"an administrative device used by the State Department to ensure it does not grant more than" the statutory cap of 50,000 diversity visas per year. *Id.* at 776–77 (citing 8 U.S.C. § 1202(b); 22 C.F.R. §§ 42.33(f)–(g), 42.61–67)). A selectee may receive a visa number only in the fiscal year in which she applied for the lottery and was selected. *Id.* at 777 (citing 8 U.S.C.

§ 1153(e)(2); 22 C.F.R. § 42.33(f)).   Once she receives her visa number, the selectee may then schedule a consular interview, and "if [she] meets the criteria to obtain one, the State Department 'shall' issue [her] a diversity visa." *Id.* (quoting and citing 8 U.S.C. §§ 1153(c), (e)(1); *id.* § 1202(h); 22 C.F.R. §§ 40.6, 42.81(a)).   If the selectee does not receive a visa by the end of the fiscal year, however, she is out of luck:  "Because the diversity visa program restarts each fiscal year, consular officers may not issue diversity visas after midnight on September 30 of the" fiscal year in which the visa applicant was selected.   *Id.* (citing 8 U.S.C. §§ 1153(c)(1), 1154(a)(1)(I)(ii)(II); 31 U.S.C. § 1102; 22 C.F.R. § 42.33(a)(1), (d)).

The Proclamation cites various justifications, rooted in economic harms caused by the COVID-19 pandemic, to justify temporarily suspending entry of new permanent residents.  First among those reasons is to protect unemployed American workers against competition in the labor market from new permanent residents.  *See* 85 Fed. Reg. at 23,441–42.  The Proclamation states that "we must be mindful of the impact of foreign workers on the United States labor market, particularly in an environment of high domestic unemployment and depressed demand for labor," and highlights the need to protect in particular "workers at the margin between employment and unemployment, who are typically 'last in' during an economic expansion and 'first out' during an economic contraction."  *Id.* at 23,441.  The Proclamation also identifies an overburdened healthcare system as reason to halt inflow of new permanent residents:  "[I]ntroducing additional permanent residents when our healthcare resources are limited puts strain on the finite limits of our healthcare system at a time when we need to prioritize Americans and the existing immigrant population."  *Id.* at 23,442.  Finally, the Proclamation cites the need to preserve State Department resources as a reason to put a pause on entry, "so that consular officers may continue to provide services to United States citizens abroad."  *Id.* at 23,441.  For these reasons, the President

suspended entry for an initial 60-day period starting April 23, 2020, though the suspension "may
be continued as necessary." *Id.* at 23,443 §§ 4–5.

### B.

Plaintiffs are family-based visa sponsors ("Family-Based Visa Plaintiffs") and diversity
visa selectees ("Diversity Visa Plaintiffs"). Lead Plaintiff Jessica Nguyen is a United States citizen
who, in 2005, filed a family-based immigrant visa petition on behalf of her brother and his family.
*See* First Am. Compl. Class Action for Declaratory & Injunctive Relief, ECF No. 5 [hereinafter
Am. Compl.] ¶ 12; Defs.' Mem. of Law in Opp'n to Pls.' Mot., ECF No. 14 [hereinafter Defs.'
Opp'n], Ex. A., Decl. of Chloe Dybdahl, ECF No. 14-1 [hereinafter Dybdahl Decl.], ¶ 5. The
petition was approved in 2010, but her brother's visa application was refused after an interview at
the Ho Chi Minh City consular office on October 21, 2019. *See* Am. Compl. ¶ 12; Dybdahl Decl.
¶ 5. The consular office requested additional documentation from Nguyen's relatives on April 23
or 24, 2020.[1] There is no indication in the current record that this information has been provided.

Plaintiffs Driss Houti, Jaafar Al-Dahwi, Md Zahiduz Zaman, Alberto Petrache, Abdulazeez
Abdulazeez, and Chedi Juez Morales—each a United States citizen or a lawful permanent
resident—also filed family-based immigrant visa petitions on behalf of family members. *See* Am.
Compl. ¶¶ 13–18; Dybdahl Decl. ¶¶ 6–14. Their family members are all awaiting visa application
interviews at consular offices abroad. Zaman's and Petrache's relatives have submitted all the
necessary paperwork for their visa applications, but their interviews were cancelled in late March
2020 due to closures associated with the COVID-19 pandemic. *See* Dybdahl Decl. ¶¶ 10–12.
Abdulazeez's and Morales's relatives have also submitted their required paperwork, but their
interviews have not yet been scheduled. *Id.* ¶¶ 13–14. Houti recently inquired into changing the

---

[1] It is unclear on the current record whether the consular office issued its request on April 23 or April 24. *Compare*
Am. Compl. ¶ 12 (April 24); Defs.' Opp'n at 12 (same), *with* Dybdahl Decl. ¶ 5 (April 23).

classification of his immigrant visa petition for his family members, but there is no indication in the record whether he has filed the required request with USCIS.  *See id.* ¶¶ 6–8.  Al-Dahwi's relative's visa application requires additional information, though it appears the consular office has not yet communicated what information is needed.  *See id.* ¶ 9.

Plaintiffs Yuliia Maksymenko, Yevhen Kovalov, Andrei Lykov, Evgenia Lykova, and Milana Lykova are 2020 diversity visa selectees and their derivative beneficiaries.  *See* Am. Compl. ¶¶ 19–20; Dybdahl Decl. ¶¶ 15–16.  Their lottery numbers are current, and they have submitted the required paperwork for their visa applications.  *See* Am. Compl. ¶¶ 19–20; Dybdahl Decl. ¶¶ 15–16.  They are currently waiting on visa application interviews at consular offices abroad.  Dybdahl Decl. ¶¶ 15–16.

The Family-Based Visa Plaintiffs allege that if the Proclamation is allowed to stand, Plaintiffs will be denied the opportunity to reunite with their family members.  *See* Am. Compl. ¶¶ 12–18.  The Diversity Visa Plaintiffs separately worry that, "[i]f they do not receive their visas by September 30, 2020, they . . . will lose the benefit of having been selected in the Fiscal Year 2020 lottery and will have to try again."  *Id.* ¶¶ 19–20; *see also id.* ¶¶ 117, 120.

## C.

On April 27, 2020, Plaintiffs filed a class-action complaint against Defendants President Trump, the United States Department of Homeland Security, Acting Secretary of Homeland Security Chad Wolf, the United States Department of State, and Secretary of State Michael Pompeo.  *See* Am. Compl. ¶¶ 21–25.[2]  They filed the instant motion for a temporary restraining order the same day.  *See generally* Pls.' Mot.

---

[2] Plaintiff Nguyen originally filed this suit on March 12, 2020, as a mandamus action seeking to compel agency action with respect to the visa-application process by Nguyen's brother and his family members, whom she has sponsored for an immigrant visa.  *See generally* Compl., ECF No. 1.

Plaintiffs argue that: (1) "the Proclamation violates the Immigration and Nationality Act ("INA"), and therefore is contrary to law and *ultra vires* under the Administrative Procedures Act ("APA")"; (2) "the Proclamation is arbitrary and capricious in violation of the APA"; and (3) "in implementing the Proclamation, [Defendants] disregarded the procedural requirements of the APA without sufficient justification." *Id.* at 18–19. Plaintiffs seek a "temporary restraining order preventing Defendants from implementing or enforcing the Proclamation." *Id.* at 49. Briefing concluded on May 11, 2020, *see generally* Pls.' Reply in Supp. of TRO, ECF No. 19 [hereinafter Pls.' Reply], and the court held a hearing on the motion three days later, *see* 5/14/2020 Minute Entry. The court does not reach the merits of Plaintiffs' claims, as it resolves the pending motion on the threshold question of standing.

## II.

Courts analyze motions for temporary restraining orders using the same standards that apply to preliminary injunctions. *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 81 (D.D.C. 2018); *Sterling Commercial Credit–Mich., LLC v. Phx. Indus. I, LLC*, 762 F. Supp. 2d 8, 12 (D.D.C. 2011). These "extraordinary" remedies "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail on such a motion, the movant bears the burden of showing, among other things, "that he is likely to succeed on the merits." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[T]he 'merits' on which [a] plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction," including standing. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015) (Williams, J.)).

"To establish standing, a party must demonstrate: '(1) an injury in fact that is concrete and particularized as well as actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision.'" *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 76 (D.C. Cir. 2020) (quoting *Nat. Res. Def. Council v. EPA*, 755 F.3d 1010, 1016 (D.C. Cir. 2014)).   In the context of a temporary restraining order or preliminary injunction, courts "require the plaintiff to show a substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity* ("*EPIC*"), 878 F.3d 371, 377 (D.C. Cir. 2017) (internal quotation marks and citation omitted).   Thus, a plaintiff seeking such extraordinary relief "cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts that, if taken to be true, demonstrate a substantial likelihood of standing." *Id.* (cleaned up) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.

### A.

Plaintiffs' assertions of standing fail right off the bat because they offer no evidence with their motion that they are injured by the Proclamation.   In fact, their motion does not even discuss standing, much less supply "specific facts" that establish a substantial likelihood thereof. *See EPIC*, 878 F.3d at 377 (quoting *Lujan*, 504 U.S. at 561).   Though Plaintiffs' Amended Complaint includes some discussion of their injuries, *see* Am. Comp. ¶¶ 12–20, 117, 120, these allegations, unsupported by record evidence, are insufficient to establish standing under the "heightened standard for evaluating a motion for summary judgment."   *EPIC*, 878 F.3d at 377

7

(quoting *Food & Water Watch*, 808 F.3d at 912–13).  This failure of proof alone defeats Plaintiffs'
demand for injunctive relief.

In an attempt to cure this deficiency, Plaintiffs attach to their reply brief the affidavits of
Plaintiffs and their family members, which, in broad terms, discuss the hardships these families
have experienced as a result of delays and uncertainties associated with their visa applications.
*See* Pls.' Reply, Ex. 1, ECF No. 19-1 [hereinafter Hardship Affs.].  Unfortunately for Plaintiffs,
this evidence, and Plaintiffs' associated standing arguments, *see* Pls.' Reply at 6–12, come too
late.  It is well-established that "the ordinary rules of forfeiture apply to standing," *Gov't of
Manitoba ex rel. Schmitt v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019); *see also Huron v.
Cobert*, 809 F.3d 1274, 1280 (D.C. Cir. 2016), including the "basic precept that arguments
generally are forfeited if raised for the first time in reply," *Twin Rivers Paper Co. v. SEC*, 934 F.3d
607, 615 (D.C. Cir. 2019); *see also Coal. for Responsible Regulation, Inc. v. EPA*, 684 F.3d 102,
147 (D.C. Cir. 2012) ("[W]e are aware of no authority which permits a party to assert an entirely
new injury (and thus, an entirely new theory of standing) in its reply brief."), *aff'd in part, rev'd
in part on other grounds sub nom. Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302 (2014).  This
"same principle applies to newly proffered evidence attached to a reply brief."  *Patterson v.
Johnson*, 391 F. Supp. 2d 140, 142 n.1 (D.D.C. 2005) (refusing to consider four affidavits attached
to the movant's reply brief), *aff'd*, 505 F.3d 1296 (D.C. Cir. 2007); *see also Nat'l Parks
Conservation Ass'n v. U.S. Forest Serv.*, No. CV 15-01582 (APM), 2015 WL 9269401, at *3
(D.D.C. Dec. 8, 2015) (declining to consider three declarations submitted with a reply brief and
purporting to establish a plaintiff's irreparable harm, when the "Plaintiff easily could have offered
such evidence with its" motion for a temporary restraining order).  Plaintiffs have identified
nothing that would excuse their failure to submit the affidavits and raise their standing arguments

with their initial motion, and it would be unfair for the court to address these late additions when Defendants have had no opportunity to respond.

**B.**

In any event, even if the court were to consider the belatedly submitted affidavits and the assertions of injury made in reply, Plaintiffs' motion fails for a more essential reason: They have not demonstrated a substantial likelihood of causation and redressability. Plaintiffs' claimed injuries fall into two buckets: harm from delayed family reunification, and harm from the lost opportunity to receive diversity visas this fiscal year. *See* Pls.' Reply at 10–11; Hardship Affs.; *see also* 5/14/2020 Hr'g Tr. at 6–8. Assuming without deciding that these are cognizable injuries in fact, there is no evidence in the record that the harms are traceable to the Proclamation, or that Plaintiffs' requested relief would redress them.

*Causation.* To establish causation, a plaintiff must show "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. The injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). Plaintiffs have not adduced any evidence that their injuries are attributable to the Proclamation or its implementation and enforcement, rather than other factors that are unchallenged in this action. For two of the Family-Based Visa Plaintiffs, Nguyen and Houti, delays in their family members' visa processing appear to be due to hiccups with their applications unrelated to the Proclamation. For instance, Plaintiff Nguyen's relatives' visa application was refused following a consulate interview on October 21, 2019, Dybdahl Decl. ¶ 5, and on April 23 or 24, 2020, the consular office in Vietnam requested additional records from Nguyen's relatives to support their application, *id.*; Am. Compl. ¶ 12, but there is nothing in the record indicating they have complied with this request. *See* Am. Compl. ¶ 12; Dybdahl Decl. ¶ 5;

Hardship Affs. at PDF p. 4–5.  Likewise, Houti has indicated his intent to reclassify the petitions

he has filed for his relatives, but there has been no representation made that he has filed the required

requests with USCIS.  *See* Dybdahl Decl. ¶¶ 6–8; Am. Compl. ¶ 13; Hardship Affs. at PDF p. 1–

3.  The consular office "expects to readjudicate" Houti's relatives' visa applications once "USCIS

acts on any request" Houti files.  Dybdahl Decl. ¶¶ 6–8.

More fundamentally, however, none of the Plaintiffs have shown that either the

Proclamation or its implementation has affected them.  Indeed, with the exception of Nguyen,

Plaintiffs have not identified any actions taken with respect to their applications after the

Proclamation was issued on April 22.  This is an important oversight because, on the current

record, it is not clear how the Proclamation affects Plaintiffs' and their families' visa applications,

which are all in various stages of processing.  The Proclamation suspends the "entry" of certain

classes of immigrants; it does not specifically address the processing of visa applications.

*See* 85 Fed. Reg. at 23,442 § 1.  None of the Plaintiffs have attested or otherwise shown that the

processing of their visa applications has ceased, or will soon cease, due to the Proclamation.  As

for Plaintiff Nguyen, the State Department's request for additional information from her relatives

on April 23 or 24, 2020, suggests that the State Department may be continuing to process at least

some visa applications notwithstanding the issuance of the Proclamation.[3]

Plaintiffs counter with an email sent to a visa applicant represented by Plaintiffs' counsel

who is not a named plaintiff in this case indicating that at least one embassy has stopped processing

visa applications due, in part, to the Proclamation.  *See* Pls.' Reply, Ex. 2, ECF No. 19-2 (email

from the Frankfurt Embassy stating that "under the Presidential Proclamation . . . , we are unable

---

[3] Because the record is ambiguous as to whether the consular office issued its request on April 23 or April 24, *compare* Am. Compl ¶ 12, *with* Dybdahl Decl. ¶ 5, the court cannot definitively say whether the request to Nguyen's relatives was made before or after the Proclamation went into effect.

to issue any immigrant visas other than those for spouses and children of U.S. citizens," and noting that "[w]hen the president lifts the restrictions under the [Proclamation] and we have resumed routine visa operations, we can process your visa application").  But this email only highlights the absence of any similar evidence in this case.  Presumably, if Defendants had ceased processing Plaintiffs' and their families' visa applications, similar paper trails would exist.

In short, there is no evidence that the Proclamation and its implementation will cause the processing of Plaintiffs' cases to "come to a screeching halt," as Plaintiffs contend.  Pls.' Reply at 11.  Therefore, at this juncture, the court can only speculate whether the challenged actions have caused, or imminently will cause, the Family-Based Visa Plaintiffs to experience any delay in reuniting with their families, or the Diversity Visa Plaintiffs to lose the opportunity to receive visas by September 30, 2020.

*Redressability*.  To establish redressability, a plaintiff must show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).  Causation and redressability are "closely related" concepts, which typically "overlap as two sides of a . . . coin."  *Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997).

Here, Plaintiffs cannot demonstrate that an order "preventing Defendants from implementing or enforcing the Proclamation," Pls.' Mot. at 49, is substantially likely to redress their injuries because, as discussed, Plaintiffs have not shown that their injuries are caused by the Proclamation or its implementation.  Simply put, the court cannot remedy an injury that is not caused by the challenged action before it.  *See* 13A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3531.4 (3d ed. 2020) ("[A] remedy addressed to actions that have not caused the injury will not alleviate the injury.").

There is another reason to doubt whether Plaintiffs' harms would be redressed by a favorable decision:  The State Department has suspended routine visa services worldwide since March 20, 2020, due to the COVID-19 pandemic.  *See Suspension of Routine Visa Services*, U.S. DEP'T OF STATE–BUREAU OF CONSULAR AFFAIRS (Mar. 20, 2020) [hereinafter March 20 Announcement][4]; Defs.' Opp'n at 3.  While the contours of that decision are not entirely clear on this record, at a minimum, it appears that "all routine immigrant and nonimmigrant visa appointments" have been cancelled since March 20, 2020.  *See* March 20 Announcement. It appears that this directive is still operative.  *See id*; *see also* 5/14/2020 Hr'g Tr. at 26; Defs.' Opp'n at 3.

The March 20 Announcement raises doubt as to whether the processing of Plaintiffs' and their families' visa applications would proceed even if the Proclamation and its implementation were enjoined.  For all Plaintiffs except three—Nguyen, Houti, and Al Dahwi—the next steps in their (or their families') visa applications are in-person interviews at United States consular offices abroad.  *See* Dybdahl Decl. ¶¶ 10–16.  However, these interviews have either been cancelled as a result of "closures due to COVID-19," *id.* ¶¶ 10–12, or have not yet been scheduled, *id.* ¶¶ 13–16. Given the State Department's ongoing directive cancelling "all visa appointments" until further notice, *see* March 20 Announcement, the court cannot conclude on this record that an order enjoining the Proclamation and its implementation would make it any more likely (much less substantially likely) that these Plaintiffs and their family members would be able to schedule and proceed with their needed interviews.

Family-Based Visa Plaintiffs Nguyen, Houti, and Al Dahwi are situated somewhat differently.  As discussed above, Nguyen's and Houti's family members' visa applications

---

[4]  Available  at  https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html (last visited May 18, 2020).

currently require additional information before they can be processed.  *See* Dybdahl Decl. ¶¶ 5–8.

A favorable decision here cannot remedy those issues.  For Al Dahwi's relative's visa application,

however, the ball is in Defendants' court.  Al Dahwi's relative's initial visa application was

refused, and Defendants have indicated that the "consular section will contact [Mr. Al Dahwi's

relative] when they are able regarding what additional documents and information he will need to

provide" for reconsideration of his application.  *Id.* ¶ 9.  Given the fact that the March 20

Announcement expressly cancels only "visa appointments," it is *possible* that the consular office

could proceed with this additional processing notwithstanding the March 20 Announcement, if the

court were to grant the requested relief.[5]  That the court is forced to speculate on this possibility,

however, only serves to accentuate that Plaintiffs have not met their burden of demonstrating that

it is substantially "likely, as opposed to merely speculative," that their injuries will be redressed

by a temporary restraining order.  *Lujan*, 504 U.S. at 561 (internal quotation marks and citation

omitted).

* * *

In sum, Plaintiffs have not demonstrated a "substantial likelihood of standing under the

heightened standard for evaluating a motion for summary judgment."  *EPIC*, 878 F.3d at 377

(internal quotation marks and citation omitted).  Plaintiffs' failure to do so "requires denial" of

their motion for temporary restraining order.  *See Food & Water Watch*, 808 F.3d at 913.  It does

not require dismissal of the case, however.  *Id.*  The court does not foreclose the possibility that

Plaintiffs may successfully establish their standing at later stages in this litigation.

---

[5] This assumes that either the Proclamation or its implementation has in fact caused, or will soon cause, the consular office to delay its processing of Al Dahwi's relative's visa application.  As discussed above, this fact has not yet been established.

## IV.

For the foregoing reasons, the court denies Plaintiffs' Motion for Temporary Restraining Order, ECF No. 6.

Dated:  May 18, 2020

Amit P. Mehta
United States District Court Judge