**In the
United States District Court
for the
District of Columbia**

| | |
|---|---|
| Jessica Nguyen, *et al*.<br>*Plaintiffs*,<br>v.<br>U.S. Department of Homeland Security, *et al*.<br>*Defendants*. | Civil Action 1:20-cv-00718 (APM) |

**BRIEF AMICUS CURIAE OF THE IMMIGRATION REFORM LAW
INSTITUTE IN SUPPORT OF DEFENDANTS AND DISMISSAL**

**INTEREST OF *AMICUS CURIAE***

The Immigration Reform Law Institute ("IRLI") is a nonprofit 501(c)(3) public interest law firm dedicated both to litigating immigration-related cases in the interests of United States citizens and to assisting courts in understanding federal immigration law. IRLI has litigated or filed briefs *amicus curiae* in many immigration-related cases before federal courts and administrative bodies, including *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); *United States v. Texas*, 136 S. Ct. 2271 (2016); *Arizona Dream Act Coal. v. Brewer*, 818 F.3d 101 (9th Cir. 2016); *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 74 F. Supp. 3d 247 (D.D.C. 2014); *Save Jobs USA v. United States Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir. 2019); *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016); and *Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010). For more than twenty years the Board of Immigration Appeals has solicited supplementary briefing, drafted by IRLI staff, from the Federation for American Immigration Reform, of which IRLI is a supporting organization, because the Board considers IRLI an expert in immigration law.

**SUMMARY OF THE ARGUMENT**

Plaintiffs challenge the President's suspension of the entry of aliens on immigrant visas in order to protect jobs for Americans in a time of sky-high unemployment resulting from a pandemic. The only boundary Congress placed on the President's power to suspend the entry of all aliens, or any class of aliens, into the United States is that, in doing so, the President must find that the entry of aliens, or that class of aliens, would be detrimental to the interests of the United States. Furthermore, the legislative history of the Immigration and Nationality Act clearly demonstrates that Congress granted so broad a power to the President in part because it wanted the President to be able to suspend the entry of aliens on immigrant visas in response to epidemics or high domestic unemployment.

2

At most, the President's suspensions of the entry of aliens are subject, under the Constitution, to rational basis review. Under the rational basis test, the President's action must be upheld if it is plausibly related to its stated objective. Here, the challenged suspension has an obvious relation to the President's stated, congressionally-contemplated objective of protecting jobs for Americans.

## ARGUMENT

Plaintiffs challenge Presidential Proclamation 10,044, 85 Fed. Reg. 23,441 (Apr. 22, 2020) ("Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak") ("the Proclamation"), issued pursuant to authority conveyed to the President by the Immigration and Nationality Act of 1952, Pub. L. No. 82–414, § 202(3), 66 Stat. 163, 188 ("INA"), codified at 8 U.S.C. § 1182(f).

The sole prerequisite for a presidential suspension of the entry of a class of aliens under § 1182(f) is a finding that the entry of such aliens would be detrimental to the interests of the United States. *Trump v. Hawaii*, 138 S. Ct. 2392, 2400 (2018). In the Proclamation, the President noted that, as a result of the COVID-19 pandemic, 22 million Americans had applied for unemployment compensation. *Id*. The President found that the admission of aliens during this economic emergency would have a detrimental effect on the labor market, and also would put a strain on the healthcare system. *Id*. at 23,441–42. Accordingly, the Proclamation temporarily suspended the admission of aliens on immigrant visas, *id*. at 23,442, exempting certain classes of aliens, including those already in the United State and those engaged in health care. *Id*.

Plaintiffs' claims, in Count II of the Amended Complaint, that the Proclamation's denial of visas denied them the equal protection of the law guaranteed in the Fifth Amendment to the

3

U.S. Constitution are without basis. The President's constitutional authority under § 1182(f) is extraordinarily broad, and the objective of the Proclamation, far from lacking a plausible relation to its suspension of entry, has an obvious relation to it that was specifically contemplated by Congress.

> Section 1182(f) provides:
>
> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

66 Stat. 188 (codified at 8 U.S.C. § 1182(f)). As the Supreme Court has held, the power this provision confers on the President is so vast that it even permits the President to suspend the entry of "'all aliens'" into the United States. *Trump v. Hawaii*, 138 S. Ct. 2392, 2407 (2018) (quoting § 1182(f)). Congress recognized as much when it enacted § 1182(f). During floor debate, Congressman Emanuel Celler of New York raised objection to the provision, stating that "[u]nder [it], as proposed, the President is given an untrammeled right, an uninhibited right to suspend immigration entirely. That is very broad power." 98 Cong. Rec. 4423.

Attempts by opponents to restrict that power failed. Congressman Abraham Multer of New York introduced an amendment that would have limited the President's power under the provision to times of war and national emergency. *Id*. Opposing that amendment, Congressman Francis Walter of Pennsylvania defended the provision as reported, calling it "absolutely essential" because there could be situations in which "it is impossible for Congress to act." *Id*. As examples, Congressman Walter cited "an outbreak of an epidemic in some country" and "a period of great unemployment." *Id*. Congressman Multer's amendment was rejected, and the provision was enacted unaltered. *See also Trump v. Hawaii*, 138 S. Ct. 2392, 2412–13 (2018) (discussing the

legislative history of § 1182(f)). Consequently, the President has the power to suspend any or all immigration if he makes a finding that the admission of the covered aliens is detrimental to the interest of the United States, *Trump*, 138 S. Ct. at 2408—a power that, of course, is not limited to situations, such as the present one, that were contemplated by Congress at the time of enactment.

Under the Constitution, the foreign affairs power of the President to suspend the entry of aliens in the national interest is subject, at most, to a form of rational basis review under which an exercise of that power is to be upheld if its objective has a plausible relation to the suspension. *Trump*, 138 S. Ct. at 2420. Here, the objective of the Proclamation is to protect American jobs during a time of soaring unemployment. Not only does that objective have a plausible—indeed, obvious—relation to the Proclamation's suspension of the entry of foreign workers, but the possibility of periods of high unemployment, such as the present one, was among the principal reasons why Congress gave the President such broad power. Accordingly, Plaintiffs' equal protection claims are without merit.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted.

DATED: June 30, 2020                    Respectfully submitted,


        /s/ Christopher J. Hajec
        _____
        Christopher J. Hajec
        D.C. Bar No. 492551
        John M. Miano
        D.C. Bar No. 1003068
        Immigration Reform Law Institute
        25 Massachusetts Ave., N.W.
        Suite 335
        Washington, D.C. 20001
        (202) 232-5590
        chajec@irli.org

        *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

     I hereby certify that, on June 30, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

                                          /s/ John M. Miano
                                          Counsel for *Amicus Curiae*